IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| CORDARIUS MORRIS, | |
| Plaintiff, | Case No. 2:24-cv-01113-SGC |
| v. | |
| OFFICER SIRDARRIUS BARNES and CITY OF IRONDALE, | |
| Defendants | |

## Defendant City of Irondale's Motion to Dismiss

Defendant City of Irondale requests that the Court dismiss it from this action under Rule 12(b)(6) of the Federal Rules of Civil Procedure because the Complaint (Doc. 1) fails to state a claim against Irondale on which relief can be granted. The Complaint has one count against Irondale that purports to be a state-law claim for "negligent hiring, training, and supervision," but (i) there are insufficient facts alleged to state that negligence claim, and (ii) a claim for negligent hiring, training, and supervision can't be maintained against a municipality in Alabama. (Doc. 1 at ¶¶ 60–63).

### Facts as Alleged in the Complaint

The facts alleged in the Complaint almost exclusively relate to Defendant Officer SirDarrius Barnes, not the City of Irondale. Irondale admits none of the

Complaint's allegations and reserves the right to challenge any facts alleged should any claims against Irondale remain. Most of the alleged facts need not be detailed here, but, in sum, the Complaint alleges that Officer Barnes, an Irondale police officer, approached Plaintiff Cordarius Morris in the parking lot of an apartment complex in Birmingham (not Irondale), searched Morris's vehicle, and then fondled Morris's genitals for about 20 minutes while making a number of bizarre comments about Morris's genitals. (Doc. 1 at ¶¶ 5–55). The Complaint alleges that Irondale "had notice or knowledge of Barnes's committing similar infractions in the past," and that if Irondale "did not have actual knowledge or notice, it would have learned of Barnes's previous infractions through due and proper diligence." (Doc. 1 at ¶¶ 61–62).

## The Standard of Review

A court should not accept conclusory allegations of a complaint that are not supported by plausible factual allegations sufficient to support the cause of action. "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Rule 8, Fed. R. Civ. P.). A complaint is insufficient "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557).

On a motion to dismiss under Rule 12(b)(6), courts "'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting Papasan *v. Allain*, 478 U.S. 265, 286 (1986)). A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citing 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, pp. 235-36 (3d ed. 2004)). And "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). The plausibility standard of *Iqbal* and *Twombly* applies to state-law claims asserted in federal court. *See, e.g.*, *Killough v. Monkress*, No. 5:17-CV-00247-AKK, 2018 WL 3641859, at *2 (N.D. Ala. Aug. 1, 2018) (applying *Iqbal* and *Twombly* to a complaint asserting several state-law claims); *Moore v. Walter Coke, Inc.*, No. 2:11-CV-1391-SLB, 2012 WL 4731255, at *2 (N.D. Ala. Sept. 28, 2012) ("Plaintiff's Amended Complaint fails to adequately plead claims for negligence, nuisance, trespass, wantonness, and injunctive relief under the pleading standards articulated by [*Iqbal* and *Twombly*.]").

## Argument

**I. The Complaint does not assert sufficient factual allegations to support the negligence claim against Irondale.**

The only allegations as to the purported claim for negligent hiring, training, and supervision is the bare-bones allegation that Irondale "had notice or knowledge

of Barnes's committing similar infractions in the past," and that if Irondale "did not have actual knowledge or notice, it would have learned of Barnes's previous infractions through due and proper diligence." (Doc. 1 at ¶¶ 61–62). These are nothing more than "'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557). There are no facts presented by the Complaint as to when such alleged previous incidents by Officer Barnes took place, to show how Irondale knew about the purported previous actions by Officer Barnes, to show who reported those purported previous incidents, or to show how Irondale should have discovered those purported previous incidents. It is not sufficient to merely allege the elements of a cause of action — there must also be some facts showing those elements. The Complaint does not contain those facts to support the negligent hiring, training, or supervision claim. Thus, the Court should dismiss the one and only count against Irondale and, as a result, dismiss Irondale from this action.

## II. A state-law claim for negligent hiring, training, and supervision cannot be asserted against a municipality.

Many cases have noted that Alabama law does not recognize a cause of action against a municipality for negligent hiring, training, or supervising. *See Stewart v. City of Homewood,* No. 2:19-cv-00955-AKK, 2019 WL 569183, at *7 (N.D. Ala. Nov. 4, 2019) ("no Alabama court has recognized as legally cognizable a claim

against a municipality for a supervisor's negligent training or supervision").[1] The reasoning of these cases is that under *Voyager Ins. Cos. v. Whitson*, 867 So. 2d 1065, 1073 (Ala. 2003), Irondale's liability depends on the liability of some Irondale employee for the same tort. *See Stewart*, 2019 WL 569183, at *7 (citing *Voyager* and saying that "because Stewart's claim against the City is contingent on Chief Ross's liability for the same tort, … in light of Stewart's failure to state such a claim against Chief Ross, … the City's motion is also due to be granted"). In *Stewart* the court relied on *Borton v. City of Dothan*, 734 F. Supp. 2d 1237, 1258 (M.D. Ala. 2010), which relied on *Ott v. City of Mobile*, 169 F. Supp. 2d 1301, 1314–15 (S.D. Ala. 2001), for the position that no Alabama case "recognizes a

---

[1] *See also Collier v. City of Bessemer*, No. 2:17-CV-711-RDP, 2018 WL 4335508, at *6 (N.D. Ala. Sept. 11, 2018) ("numerous courts" have recognized that "Alabama law does not recognize a cause of action against a municipality or supervisor for negligent training or supervision"); *Brown v. City of Birmingham*, No. 2:15-cv-01273-SGC, 2017 WL 4264997, at *10 (N.D. Ala. Sept. 26, 2017) ("Brown styles his second claim as 'negligent supervision, hiring, and maintenance.' … Alabama law does not recognize any of these claims against a municipality."); *Wright v. City of Ozark*, No. 1:12–cv–936–MEF, 2014 WL 1765925. *8 (M.D. Ala. May 2, 2014) ("Wright's negligent hiring claim against the City is due to be dismissed because there is no direct action against a municipality for negligent hiring."); *Borton v. City of Dothan*, 734 F. Supp. 2d 1237, 1258 (M.D. Ala. 2010) ("no Alabama court has expressly recognized a cause of action against a municipality for a supervisor's negligent training or supervision of a subordinate"); *Cornelius v. City of Andalusia*, No. 2:06-CV-00312-WKW, 2007 WL 4224036, at *5 (M.D. Ala. Nov. 28, 2007) ("Alabama courts have not recognized a cause of action against a municipality for negligent training."); *Doe v. City of Demopolis,* 799 F. Supp. 2d 1300, 1310 (S.D. Ala. 2001) ("a claim against a municipality for a supervisor's negligent hiring or training is not cognizable under Alabama law").

cause of action against a supervisory employee for the negligent training or supervision of a subordinate." The court in *Ott* explained the Alabama cases that support the conclusion that there is no cause of action against an individual supervisory employee of an employer for negligent supervising or training:

> Alabama law is clear that the tort of negligent supervision or training requires as an element the existence of a master-servant relationship. "We are mindful of ... the fact that this Court recognizes a cause of action *against the master* based upon the incompetence of the servant." *Lane v. Central Bank, N.A.,* 425 So. 2d 1098, 1100 (Ala. 1983) (emphasis added); *accord Big B, Inc. v. Cottingham,* 634 So. 2d 999, 1002–03 (Ala. 1993). A supervisor is not the master of a subordinate, nor is the subordinate the servant of the supervisor; rather, as Alabama cases make plain, the status of "master" is restricted to one who is actually or essentially the employer of the servant. *E.g., Tyson Foods, Inc. v. Stevens,* 783 So. 2d 804, 807–08 (Ala. 2000) (a contractor becomes the master of a subcontractor by retaining sufficient right to control the manner in which the subcontractor works); *Hauseman v. University of Alabama Health Services Foundation,* 793 So. 2d 730, 735–36 (Ala. 2000) (using "master" interchangeably with "employer"). Indeed, the plaintiffs recognize as much, admitting that their theory does not depend on negligence of the "employer or master" but of a supervisor. Accordingly, because **Alabama recognizes no cause of action against a supervisor for negligent failure to supervise or train a subordinate**, Count Four[, the claim against the City for negligent failure to supervise or train,] is due to be dismissed.

*Ott*, 169 F. Supp. 2d at 1315 (footnote omitted; citation to court's record omitted; bold and underline emphasis added). This explanation based on Alabama cases shows that because a subordinate cannot be sued for negligent supervising or training, a city, whose liability must be based on the liability of its employee or agent, also cannot be liable for negligent supervising or training under Ala. Code

6

§ 11-47-190. The court in *Thompson v. City of Muscle Shoals*, No. 3:12–CV–01686–CLS, 2012 WL 4815466, at *6–7 (N.D. Ala. Oct. 10, 2012), relying on *Ott*, also held that a <u>supervisor</u> <u>cannot be held liable</u> for negligent hiring, training, or supervising of an employee, <u>so Irondale, as the supervisor's employer, cannot be held liable either</u> under § 11-47-190:

> While the liability of a private employer can be predicated on the doctrine of vicarious liability, the liability of a municipal employer "under Section 11-47-190 is based on the doctrine of respondeat superior." *Ott v. City of Mobile*, 169 F. Supp. 2d 1301, 1314 (S.D. Ala. 2001) (citing *City of Lanett v. Tomlinson*, 659 So. 2d 68, 70 (Ala. 1995)). Before a city can be liable under that doctrine, one of its employees must be liable for a tort. *Id*.
>
> Under Alabama law, the tort of negligent supervision or training requires the existence of a master-servant relationship between the employee and his supervisor. *See Ott*, 169 F. Supp. 2d at 1314. As a result, a plaintiff who seeks to sue a municipality for such a tort "must show that Alabama law recognizes a cause of action against a supervisory employee for the negligent training or supervision of a subordinate." *Id*.
>
> However, a supervisor "is not the master of a subordinate, nor is the subordinate the servant of the supervisor; rather, as Alabama cases make plain, the status of 'master' is restricted to one who is actually or essentially the employer of the servant." *Ott*, 169 F. Supp. 2d at 1314 (citing *Tyson Foods, Inc. v. Stevens*, 783 So. 2d 804, 806 (Ala. 2000); *Hauseman v. University of Ala. Health Servs. Found.*, 793 So. 2d 730, 732 (Ala. 2000)). **Thus, "no such cause of action exists" against a municipality**. *Id*.

*Thompson*, 2012 WL 4815466, at *6–7 (emphasis added); *see also Harris v. City of Gurley*, No. CV-09-S-2108-NE, 2010 WL 11613800, at *18 (N.D. Ala. Mar. 26, 2010) ("[T]here is no cognizable claim under Alabama law against Chief Wright

7

for failure to train and/or supervise any of his subordinate officers. Further, because there is no cognizable claim against Chief Wright, there also is no cognizable claim against the Town."). This warrants the dismissal of the only claim as to the City of Irondale.

### III. Irondale is immune from a claim for negligent training, supervising, or hiring because the official involved in training, supervising, or hiring has state-agent immunity under *Cranman*.

Finally, if Irondale's "hiring official" was negligent in training, supervising, or hiring, and if Alabama recognized a cause of action against that employee for negligently training, supervising, or hiring (which, as explained above, it does not), then Irondale is still immune because the unidentified employee the Complaint claimed to be responsible for the training, hiring, and supervising has immunity. Under the facts alleged, the "hiring official" (Doc. 1 at ¶ 63), when engaging in hiring, training, and supervising, would be exercising discretionary functions in the line and scope of his or her duties. That would entitle the "hiring official" to state-agent immunity under Ala. Code § 6-5-338 and *Ex parte Cranman*, 792 So. 2d 392 (Ala. 2000) (as adopted in *Ex parte Butts*, 775 So. 2d 173 (Ala. 2000)). If the "hiring official" is immune, then so is Irondale under *City of Crossville v. Haynes*, 925 So. 2d 944, 955 (Ala. 2005).

Under *Cranman*, "A State agent *shall* be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the

agent is based upon the agent's … (2) exercising his or her judgment in the administration of a department or agency of government, including, but not limited to, examples such as:   … (d) **hiring, firing, transferring, assigning, or supervising personnel ….**" *Cranman*, 792 So. 2d at 405 (italics emphasis in original; bold emphasis added). So <u>**hiring and supervising are explicitly included as functions for which a police officer is immune**</u> (unless violating some law, rule, or regulation, which Plaintiff has not alleged, or acting willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law, which would give Irondale immunity under § 11-47-190). And though not explicitly set out, the *Cranman* functions include training, too, as explained in *Howard v. City of Atmore*, 887 So. 2d 201, 210 (Ala. 2003): "Howard argues that category (2) does not specifically mention 'training.' … Howard reads *Cranman* too rigidly. '[T]he situations listed in subparagraphs (2)(a)–(d) of the *Cranman* immunity rule are expressly only "examples" of the general principle stated in paragraph (2) itself.' *Ryan v. Hayes*, 831 So. 2d 21, 31 (Ala. 2002). Category (2)(a)–(d) includes 'training,' as well as 'supervising.'" Since it is "well established that, if a municipal peace officer is immune pursuant to § 6-5-338(a), then, pursuant to § 6-5-338(b), the city by which he is employed is also immune." *Howard*, 887 So. 2d at 211.

As a matter of law, under the facts alleged in the Complaint, either the "hiring official" is immune for hiring, training, and supervising under *Cranman* and § 6-5-338(a), thereby also making Irondale immune for that under § 6-5-338(b), or the "hiring official" acted "maliciously" and "in bad faith," thereby constituting intentional, reckless, or malicious conduct that qualifies Irondale for immunity under Ala. Code § 11-47-190.

There are, therefore, no set of facts under the Complaint that would allow Plaintiff to recover from Irondale for negligent training, hiring, or supervising, so this Court should dismiss Irondale from this action.

## Conclusion

Defendant City of Irondale asks the Court to dismiss it from this action because the Complaint fails to state a claim against it on which relief may be granted.

Respectfully submitted.

 *s/ Michael L. Jackson*
Michael L. Jackson
mjackson@wallacejordan.com

Attorney for Defendant City of Irondale and Officer SirDarrius Barnes

Of Counsel:
Wallace Jordan Ratliff & Brandt, LLC
P.O. Box 530910
Birmingham, Alabama 35253
(205) 870-0555